**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RANDY SCOTT ANGER,

      Petitioner,               Civil No. 2:14-CV-14159
                                 HONORABLE GERALD E. ROSEN
v.                            CHIEF UNITED STATES DISTRICT JUDGE

PAUL KLEE,

      Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**
**AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO**
**APPEAL IN FORMA PAUPERIS**

      Randy Scott Anger, ("Petitioner"), confined at the Gus Harrison Correctional Facility in Adrian, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his convictions for possession of 50 or more but less than 450 grams of cocaine, M.C.L.A. 330.7403(2)(a)(iii); three counts of possession of other controlled substances, M.C.L.A. 330.7403(2)(b)(ii); one count of possession of a firearm during the commission of a felony, M.C.L. A. 750.227b, and being a second felony habitual offender, M.C.L.A. 769.10.  For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I.  Background

      On September 25, 2007, officers executed a search warrant at a property at 1212 Woodlow in Waterford Township, Michigan, where petitioner was living.  Petitioner was at home showering at the time of the raid.  Police searched the home and the pole barn on the property and recovered cocaine, marijuana, vials of steroids, a loaded pistol, other firearms, and over $ 4,000.00 in cash.  One of the officers searching the home found a set

1

of keys on the kitchen counter that included a key that opened the door to the house, a key to a pickup truck parked in the driveway that was registered in petitioner's name, and a key that opened a tool box in the pole barn where some of the contraband was recovered,. The officer in charge of the case ran petitioner's driving record through the Michigan Secretary of State and it listed 1212 Woodlow as petitioner's address, although title to the property had been conveyed by petitioner to another individual named Carrie Stafford.

Following a jury trial, petitioner was convicted in the Oakland County Circuit Court of possession of 50 to 450 grams of cocaine, three counts of possession of other controlled substances, one count of possession of a firearm during the commission of a felony, and being a second felony habitual offender. Petitioner was found not guilty of several other drug and firearms offenses.

Petitioner's conviction was affirmed on appeal. *People v. Anger,* No. 300164, 2011 WL 6186957 (Mich. Ct. App. Dec. 13, 2011); *lv. den.* 492 Mich. 865 (2012). Petitioner then filed a post-conviction motion for relief from judgment, which was denied. *People v. Anger*, No. 07-218338-FH (Oakland County Circuit Court, December 13, 2012). The Michigan appellate courts denied petitioner leave to appeal the trial court's denial of his post-conviction motion. *People v. Anger*, No. 314281 (Mich.Ct.App. October 8, 2013); *lv. den.* 495 Mich. 918 (2013).

Petitioner seeks a writ of habeas corpus alleging the following grounds:

I. Ineffective assistance of counsel throughout criminal trial and appeal process [based on] (a) Failure to object or notify the Defendant of the prosecution's intent to seek erroneous sentence enhancement, (b) failure to object to the non-existent informant's identity being kept confidential and whom [sic] is the actual perpetrator of this crime, (c) failure to object or advise the Defendant of his right to refuse court ordered administration of antipsychotic drugs, and (d) failure to object to the judge revoking the

Defendant's bail without cause. The appellate attorney refused to argue these issues in the appeals brief.

II. The police used information provided by the actual perpetrator and use[d] false statements to secure an invalid search warrant to frame the Defendant.

III. The Defendant received a severe closed head [injury] while waiting for his trial date and never regained his competency that left him unable to defend himself.

IV. The [trial] court revoked the Defendant's bail without cause and held him in jail pending a competency hearing.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent

3

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

### III. Discussion

### A. The motion for the appointment of counsel will be denied.

Petitioner has requested the appointment of counsel to assist with his habeas case.

There is no constitutional right to counsel in habeas proceedings. *Cobas v. Burgess,* 306 F.3d 441, 444 (6th Cir. 2002)*; Lemeshko v. Wrona,* 325 F. Supp, 2d 778, 787 (E.D. Mich. 2004). The decision to appoint counsel for a federal habeas petitioner is within the discretion of the court and is required only where the interests of justice or due process

4

so require. *Mira v. Marshall*, 806 F. 2d 636, 638 (6th Cir. 1986).  Appointment of counsel in a habeas proceeding is mandatory only if the district court determines that an evidentiary hearing is required. *Lemeshko,* 325 F. Supp. 2d at 787.  If no evidentiary hearing is necessary, the appointment of counsel in a habeas case remains discretionary. *Id.*

Counsel may be appointed, in exceptional cases, for a prisoner appearing *pro se* in a habeas action. *Lemeshko*, 325 F. Supp. 2d at 788.  The exceptional circumstances justifying the appointment of counsel to represent a prisoner acting *pro se* in a habeas action occur where a petitioner has made a colorable claim, but lacks the means to adequately investigate, prepare, or present the claim. *Id.*

Petitioner has filed a petition for writ of habeas corpus and numerous briefs, pleadings, and exhibits.  Petitioner's claims are "sufficiently clear and coherently organized as to allow this Court to weigh the merits of his claims." *Lemeshko,* 325 F. Supp. 2d at 788.  In light of the fact that none of these claims have any merit, petitioner is not entitled to the appointment of counsel. *Id.*  The motion for the appointment of counsel is denied.

### B.  Claim # 1.  Petitioner's ineffective assistance of counsel claims are unexhausted and procedurally defaulted.

Petitioner first alleges the ineffective assistance of trial and appellate counsel.

Respondent contends that petitioner's ineffective assistance of counsel claims are procedurally defaulted because he never properly exhausted them with the Michigan courts and no longer has an available remedy with which to do so.

As a general rule, a state prisoner seeking federal habeas relief must first exhaust his or her available state court remedies before raising a claim in federal court. 28 U.S.C.

5

§ 2254(b) and (c); *Picard v. Connor*, 404 U. S. 270, 275-78 (1971).  A petition for a writ of habeas corpus filed by a state prisoner shall not be granted unless the petitioner has exhausted his or her available state court remedies, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the petitioner's rights. *See Turner v. Bagley,* 401 F. 3d 718, 724 (6th Cir. 2005).

Petitioner did not raise an ineffective assistance of trial or appellate counsel claim on his direct appeal.

Petitioner's post-conviction motion for relief from judgment that he filed with the trial court did not contain an ineffective assistance of counsel claim, either.[1]  Although petitioner requested an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973), petitioner only requested a hearing in the context of being able to confront the confidential informant in this case.  Petitioner did not mention any ineffective assistance of counsel claims in his motion for relief from judgment.  In his applications for leave to appeal the denial of his post-conviction motion to the Michigan Court of Appeals and the Michigan Supreme Court, petitioner for the first time mentioned allegations of ineffective assistance of trial and appellate counsel; however, he did so only in the argument section of several of other claims.  Petitioner did not specifically present ineffective assistance of counsel as the basis for either of his requests for leave to appeal, nor did he indicate in the list of issues or headings of either of his appellate briefs any ineffective assistance of counsel claims. [2]

---

[1]  *See* post-conviction motion filed as Petitioner's Exhibit VI, also part of this Court's Dkt. # 8-17.

[2]  See Application for Leave to Appeal to the Michigan Court of Appeals, filed as Petitioner's Exhibit IIX [sic], also this Court's Dkt. # 8-22; Application for Leave to Appeal to the Michigan Supreme

In order to properly exhaust a claim on state post-conviction review, a habeas petitioner is required to present that claim in his or her post-conviction motion before the state trial court and in his or her post-conviction appeal to the state's appellate courts. *See Smith v. Gaetz,* 565 F.3d 346, 352 (7th Cir. 2009).

A number of cases have suggested that a habeas petitioner's failure to present an issue before a state trial court in a motion for post-conviction relief precludes a finding that the issue has been exhausted for purposes of habeas review, even if that issue is later presented on appeal to the state's appellate courts from the denial of the post-conviction motion. *See e.g., Lindquist v. Gardner*, 770 F. 2d 876, 878 (9th Cir. 1985)(Idaho state prisoner did not exhaust his state remedies by presenting his claim to the state  supreme court in an original habeas proceeding, where prisoner had a post-conviction remedy under the Uniform Post-Conviction Procedure Act which he should have pursued in the court in which he was convicted and sentenced); *Drake v. Wyrick*, 640 F. 2d 912, 916 (8th Cir. 1981)(petitioner failed to exhaust claim, where he did not assert claim in his post-conviction motion, raising it for the first time on the appeal of the denial of his post-conviction motion); *See also Lesure v. Atchison,* 891 F. Supp. 2d 920, 925-26 (N.D. Ill. 2012); *Middlebrook v. Carroll,* 470 F. Supp. 2d 411, 420 (D. Del. 2007); *Geraci v. Senkowski*, 23 F. Supp. 2d 246, 265-266 (E.D.N.Y. 1998).

Numerous judges in this district have held that a habeas petitioner's claims were not properly exhausted when they were not presented in the petitioner's post-conviction motion for relief from judgment before the trial court and were raised only for the first time

---

Court, filed as Petitioner's Exhibit IX, also this Court's Dkt. # 8-23.

7

in the application for leave to appeal to the Michigan Court of Appeals. *See Ceasar v. Warren,* No. 06–CV–15294, 2009 WL 1543327, * 4 (E.D. Mich. June 2, 2009)*; West v. Jones*, No. 06–CV–12057, 2008 WL 1902063, *11–12 (E.D. Mich. April 29, 2008); *Dorch v. Smith*, No. 01–CV–71206–DT, 2002 WL 32598987, *19 (E.D. Mich. Sept. 11, 2002); *aff'd* 105 Fed. Appx. 650 (6th Cir. 2004); *Kincade v. Stegall,* No. 99–CV–76350–DT; 2001 WL 279751, * 5 (E.D. Mich. Jan. 23, 2001).

Petitioner's ineffective assistance of trial and appellate counsel claims are unexhausted, because he failed to present these claims in his motion for relief from judgment with the trial court.

Compounding the problem is that although petitioner made several allegations of ineffective assistance of counsel in his post-conviction appeals, he only did so in the argument section of several other claims. Petitioner did not raise any ineffective assistance of counsel claims in the statement of questions or headings in either post-conviction appeal brief. M.C.R. 7.212(C)(5) requires a statement of the questions involved, with each issue for appeal separately numbered. *See Dando v. Yukins,* 461 F. 3d 791, 797 (6th Cir. 2006). By failing to include any ineffective assistance of counsel claims in the headings in his post-conviction appellate briefs, petitioner did not fairly present these ineffective assistance of counsel claims to the state courts for purposes of properly exhausting these claims. *Wagner v. Smith*, 581 F.3d 410, 415-16 (6th Cir. 2009).

Unfortunately, petitioner no longer has any available state court remedies with which to exhaust the claims. Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan is only permitted to file one post-conviction motion for relief from judgment. *See Gadomski*

8

*v. Renico,* 258 F. App'x. 781, 783 (6th Cir. 2007); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999). Petitioner has no remaining state court remedies with which to exhaust his ineffective assistance of counsel claims. If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust. However, the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995). A claim of actual innocence will excuse this "cause and prejudice" requirement. *Id.* at 1196, n. 3.

Petitioner has failed to establish cause to excuse his default. While ineffective assistance of appellate counsel might excuse petitioner's failure to raise these claims on his direct appeal, it does not excuse petitioner's own failure to correctly exhaust these claims in his post-conviction motion for relief from judgment. *See Gadomski v. Renico*, 258 F. App'x. at 784.

Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *See also Alexander v. Smith,* 342 F. Supp. 2d 677, 685 (E.D .Mich. 2004). Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his ineffective assistance of counsel claims as a ground for a writ of habeas corpus in spite of the procedural default. Although petitioner claims that he was "framed" or "set up" for the crime, he has presented no evidence to support such an allegation. Petitioner's conclusory claim of actual

9

innocence is insufficient to excuse the procedural default of his claims. *See Ray v. Simmons,* 125 Fed. Appx. 943, 946 (10th Cir. 2005). Because petitioner has not presented any new reliable evidence that he is innocent of this crime, a miscarriage of justice will not occur if the Court declined to review the procedurally defaulted claims on the merits. *See Alexander*, 342 F. Supp. 2d at 685. Petitioner is not entitled to relief on his first claim.

**C. Claim # 2. Petitioner is not entitled to relief because the state court refused to order that the identity of the confidential informant be disclosed.**

As part of his second claim, petitioner contends that he was deprived of his right to confrontation and to a fair trial because the trial court denied his motion to order the prosecutor to reveal the identity of the confidential informant. Detective Fletemier stated in the affidavit in support of the search warrant that the confidential informant told him that he had personally seen multiple ounces of cocaine and multiple pounds of marijuana stored at petitioner's house within the last 48 hours.

Petitioner raised this claim on his post-conviction motion for relief from judgment. The trial judge denied his claim on the ground that petitioner failed to establish that the informant's testimony would have been relevant or favorable to him or would have exculpated him of the crime. The trial judge also ruled that Detective Fletemier's testimony involving the confidential informant did not violate the Confrontation Clause because it was not offered for the truth of the matter asserted but to explain why the police organized the surveillance and search of petitioner's home. *People v. Anger*, No. 07-218338-FH, * 11-14 (Oakland County Circuit Court, December 13, 2012).

Where the disclosure of a confidential informant's identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the

10

privilege [to keep the informant's identity secret] must give way." *Roviaro v. United States,* 353 U.S. 53, 60 (1957). The burden is on an individual who seeks disclose of the identity of a confidential informant to show the need for such a disclosure. *See Emmons v. McLaughlin,* 874 F. 2d 351, 357 (6th Cir. 1989). "Mere speculation as to the usefulness of the informant's testimony is insufficient to justify disclosure of his identity." *Id.,* at 358; *See also United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985)("mere conjecture or supposition" will not support the disclosure of the informant's identity). "*Roviaro* does not require disclosure of an informant's identity where...there is no indication that the informant participated in or witnessed the offense charged." *Simpson v. Kreiger*, 565 F.2d 390, 391-92 (6th Cir. 1977).

In the present case, other than petitioner's speculation that the informant was the actual perpetrator or somehow participated in the drug transactions, petitioner failed to show that the confidential informant's identity was important to either the prosecution's trial strategy or his defense. *See United States v. Smotherman*, 564 F. App'x. 209, 213 (6th Cir. 2014). The only role the confidential informant played was supplying information to the police that led to the search of petitioner's home. Because there is no showing that the informant was involved with the possession of sale of drugs or weapons out of petitioner's house or witnessed the raid, petitioner is not entitled to relief on his claim. *See United States v. Beals*, 698 F.3d 248, 270 (6th Cir. 2012).

Petitioner's related Confrontation Clause claim is without merit. Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are

11

deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36, 68-69 (2004). However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.,* at 59, n. 9; *See also Tennessee v. Street*, 471 U.S. 409, 414 (1985)(defendant's rights under the Confrontation Clause were not violated by introduction of an accomplice's confession for the nonhearsay purpose of rebutting defendant's testimony that his own confession was coercively derived from the accomplice's statement). Indeed, "[I]n some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay." *United States v. Gibbs*, 506 F. 3d 479, 486-87 (6th Cir. 2007)(*quoting United States v. Martin*, 897 F. 2d 1368, 1371 (6th Cir. 1990)). Evidence that is provided merely by way of background or is offered only to explain how certain events came to pass or why law enforcement officers took the actions that they did is not offered for the truth of the matter asserted, and thus cannot trigger a Confrontation Clause violation. *See U.S. v.Warman,* 578 F. 3d 320, 346 (6th Cir. 2009)(*quoting United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004)).

The admission of Detective Fletemier's testimony about the confidential informant did not violate petitioner's Sixth Amendment right of confrontation because it was not offered to prove the truth of the matter asserted, but was only offered for the nonhearsay purpose of helping the jury to understand the surveillance and the search of petitioner's home by the police. Because the testimony was offered as background evidence of the police investigation and was not offered for its truth, petitioner's confrontation rights were

12

not violated.[3]  Petitioner is not entitled to relief on this portion of his second claim.

### D.   Claim # 2.   Petitioner is not entitled to habeas relief on his Fourth Amendment claim.

As part of his second claim, petitioner argues that the search warrant was invalid because it was based on false or incomplete information, and therefore, the trial court should have suppressed the evidence.

Petitioner's counsel filed a motion to suppress the evidence.  An evidentiary hearing was conducted on petitioner's motion on September 10, 2008.  The judge subsequently issued an opinion and order denying the motion to suppress. *People v. Anger*, No. 07-218338-FH (Oakland County Circuit Court, December 2, 2008).  The Michigan Court of Appeals on direct appeal rejected petitioner's challenge to the legality of the search and affirmed the denial of the motion to suppress. *People v. Anger,* 2011 WL 6186957, * 1-2.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000).  For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982).  The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne*

---

[3]  The Court notes that no limiting instruction was requested or given.

13

*v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010). Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis,* 638 F. Supp. 2d 795, 812 (E.D. Mich. 2009). "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (quoting *Gilmore v. Marks*, 799 F. 2d 51, 57 (3rd Cir. 1986)). Thus, an argument by a habeas petitioner that is "directed solely at the correctness of the state court decision[on a Fourth Amendment claim] 'goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant.'" *Brown,* 638 F. Supp. 2d at 812-13 (quoting *Siripongs v. Calderon*, 35 F. 3d 1308, 1321 (9th Cir. 1994)).

Detective Fletemier's alleged perjury at the suppression hearing did not deprive petitioner of a full and fair opportunity to litigate his Fourth Amendment claim. *See Brown v. Berghuis,* 638 F. Supp. 2d at 811; *See also Sneed v. Smith*, 670 F. 2d 1348, 1356 (4th Cir. 1982)(*Stone* rule "would of course be swallowed if impairment [of a full and fair opportunity to litigate] could be shown simply by showing error - whether of fact or law - in the state court proceeding. Sneed's suggestion of perjury is merely a suggestion of factual error."). Moreover, the refusal to disclose the informant's identity likewise did not deny petitioner a full and fair opportunity to litigate his Fourth Amendment claims in the state court. *See Simpson v. Kreiger,* 565 F.2d at 392.

Petitioner is unable to raise a Fourth Amendment claim that the evidence in this case was the product of an illegal search when he raised the factual basis for this claim

14

in the state trial and appellate courts and the state courts thoroughly analyzed the facts and applied the proper constitutional law in rejecting his claim. *Machacek*, 213 F. 3d at 952; *Monroe,* 197 F. Supp. 2d at 766. Petitioner is not entitled to relief on his claim.

### E.  Claim # 3.  Petitioner failed to show that he was incompetent to stand trial.

Petitioner in his third claim alleges that a head injury that he received during the pendency of his case rendered him incompetent to stand trial. Petitioner further claims that the trial court forced him against his will to take anti-psychotic medications. [4]

An initial competency evaluation was performed on petitioner, at which time the first forensic examiner, Dr. Dianne K. Sherman, recommended that petitioner be found incompetent to stand trial due to memory problems, difficulties organizing thoughts, retrieving words and speaking; vision problems; post-traumatic seizures; headaches; hallucinations; and paranoia, all the result of a closed head injury that petitioner received after being robbed and assaulted in Detroit on October 25, 2008. Significantly, Dr. Sherman did suggest that any subsequent evaluations rule out malingering or

---

[4] Respondent contends that petitioner's claim is procedurally defaulted pursuant to M.C.R. 6.508(D)(3), because he raised his claim for the first time in his post-conviction motion and failed to show cause and prejudice for not raising his claim on his direct appeal. The problem with respondent's argument is that the trial judge, in denying the motion for relief from judgment, initially denied the claim under M.C.R. 6.508(D)(2), on the ground that the claim had already been raised on petitioner's direct appeal in his application for leave to appeal before the Michigan Supreme Court, although the judge later mentioned M.C.R. 6.508(D)(3) to deny the claim as well. The Sixth Circuit has observed that "there must be unambiguous state-court reliance on a procedural default for it to block" a federal court from reviewing a state court decision. *Bowling v. Parker*, 344 F. 3d 487, 498 (6th Cir. 2003)(citing *Gall v. Parker*, 231 F.3d 265, 321 (6th Cir. 2000)). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Given the lack of clarity as to whether the claim was rejected under M.C.R. 6.508(D)(2) or M.C.R. 6.508(D)(3), the Court will address the merits of the claim.

exaggeration of memory impairment or other cognitive disorders. [5]  The judge ordered that petitioner was incompetent to stand trial.  However, the judge further found that there was "a substantial probability" that if petitioner was provided with treatment, he would regain his competence to stand trial within the time limits established under M.C.L.A. 330.2034.  Therefore, Petitioner was ordered committed to the Department of Mental Health for a course of treatment. *People v. Anger*, No. 07-218338-FH (Oakland County Circuit Court, July 29, 2009).

Petitioner was admitted to the Caro Center on August 12, 2009 and was recommended as being restored to competency on November 30, 2009.  A neurological consult done on November 12, 2009 did not support a seizure disorder and there were no visible brain lesions.  Petiitoner was being treated with Seroquel, Celexa, Elavil, and Xanax.  His discharge diagnosis indicated that petitioner had major depression with psychosis, a mental disorder due to a closed head injury with some visual, speech, and motor impairment, as well as partial seizure disorder.  However, the staff at Caro Center upon petitioner's discharge noted that his remote, recent, and immediate memory were intact and his formal judgment was not impaired. [6]

Dr. Hill evaluated petitioner on April 22, 2010 at the Forensic Center of Psychiatry.  Dr. Hill noted that petitioner was oriented to time, place, and person, and his behaviors "were organized and appropriate."  Petitioner was able to interact with Dr. Hill and could speak in an "organized, logical, coherent, and chronological fashion," even though some

---

[5]  See Forensic Report from of Dr. Michelle Hill, dated April 22, 2010, p. 5.

[6]  *Id.,* p. 5.

16

of his responses were latent and slow. [7]  Although petitioner complained of poor memory, Dr. Hill noted there was no evidence of memory impairment, as petitioner was able to provide a great deal of detailed information concerning the events surrounding his arrest and could also recall information told to him two hours earlier. [8]  The tests for malingering, in fact, suggested that petitioner "heavily exaggerated [his] neurological and memory impairment." [9]  Dr. Hill noted that in spite of his alleged amnesia, petitioner "was able to refute accusations by police with rational arguments that did not seem bizarre or delusional." [10]  Dr. Hill noted that petitioner was able to understand the criminal proceedings against him in detail and his various rights. [11]  Dr. Hill concluded that petitioner was competent to stand trial and that his neurogical and memory impairments appeared exaggerated and did not interfere with petitioner's ability to discuss his case. [12]

Petitioner was subsequently found competent to stand trial.  Although a transcript of the competency hearing was never transcribed, at sentencing, the judge, prosecutor, and defense counsel all indicated that petitioner had been found competent to stand trial. (Tr. 8/18/2010, pp. 14-15, 18-19).

A defendant may not be put to trial unless he or she has a sufficient present ability

---

[7]  *Id.,* p. 3.

[8]  *Id.,* pp. 3, 9-10.

[9]  *Id.,* p. 9.

[10]  *Id.,* p. 10.

[11]  *Id.,* pp. 10-11.

[12]  *Id.,* p. 12.

to consult with his or her lawyer with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). A state may presume that a defendant is competent to stand trial and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence. *Id.* at 355.

Petitioner's basis for his mental incompetency is primarily his claim that he has little or no memory of events surrounding his search and arrest due to the subsequent head injury that he received.

Amnesia about a crime "does not render a defendant per se incompetent to stand trial." *United States v. Andrews*, 469 F. 3d 1113, 1119 (7th Cir. 2006)(collecting cases). In order to determine whether a defendant's amnesia renders him or her incompetent to stand trial, courts should consider such factors as:

> (1) Whether the defendant has any ability to participate in his defense;
> (2) Whether the amnesia is temporary or permanent;
> (3) Whether the crime and the defendant's whereabouts at the time of the crime can be reconstructed without the defendant's testimony;
> (4) Whether access to government files would aid in preparing the defense;
> (5) The strength of the government's case against the defendant.

*Id.* at 1119.

In the present case, the evidence of petitioner's guilt to the charges was overwhelming, and petitioner failed to identify any "reasonable defenses" he was precluded from raising due to his claimed amnesia. *Andrews*, 469 F.3d at 1121. Indeed, a review of the psychiatric records that petitioner provided to the Court from the Training and Treatment Innovations (TTI) where petitioner went for psychiatric treatment indicate

18

that on several occasions, petitioner was able to recount the details of his arrest. [13]   In a report dated August 28, 2009, petitioner indicated that he believed the drug and firearms charges may have been a "set up" by his ex-wife to "frame" petitioner in order to prevent him from having visitation with their son.  Petitioner stated that he was in the shower when the police raided his home, a fact corroborated by police testimony at trial.  A TTI report from October 16, 2009 indicated that petitioner's memory was good.  Dr. Hill in her report mentioned that petitioner was able to discuss the details of the offense with her in detail. Finally, at sentencing, petitioner, in spite of his memory problems, was able to bring up details from his prior negligent homicide conviction and challenged its use to enhance his sentence on the ground that it was only a misdemeanor and not a felony.(Tr. 8/18/2010, pp. 19-21).

In the present case, there is no showing that petitioner was incompetent to stand trial where there was no showing that his head injury and alleged resultant memory problems prevented him from being able to assist in his defense or understand the proceedings against him. *See e.g. United States v. Denkins*, 367 F.3d 537, 541, 547-48 (6th Cir. 2004).

As a related claim, petitioner contends that the trial judge forced him against his will to take anti-psychotic medications in order to render him competent to stand trial.

In *Riggins v. Nevada*, 504 U.S. 127 (1992), the Supreme Court held that forcing a defendant to be administered antipsychotic drugs during the course of trial over his objection without a finding by the court that there were no less intrusive alternatives, that

---

[13]   The reports generally are found in Petitioner's Exhibit XXXVII.

the medication was medically appropriate, and that it was essential for the sake of defendant's safety or the safety of others, violates the defendant's Fourteenth Amendment right to due process. *Id.* at pp. 134-38.

Subsequently, in *Sell v. United States*, 539 U.S. 166, 179 (2003), the Supreme Court held that anti-psychotic medication may involuntarily be administered to a defendant for the purpose of rendering him or her competent to stand trial, if the government shows that: (1) important government interests are at stake; (2) involuntary medication is substantially likely to render the defendant competent to stand trial and substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel at trial; (3) involuntary medication is necessary to further the government's interests, and less intrusive means are unlikely to achieve substantially the same results; and (4) the administration of the drugs is medically appropriate. *Id.* at 180-82.

Petitioner failed to show that he involuntarily took these medications.  In a letter sent to the trial judge, petitioner indicated that he was placed on anti-psychotic medication at the Caro Center in the hope he would regain competency.  Petitioner told the judge that "he was eager to get out of the Caro Center, and finish the trial.  So I complied with all court and docter's (sic) orders." [14]   The judge, on post-conviction review, denied petitioner's claim on the ground that petitioner agreed to take the medications. *People v. Anger*, No. 07-218338-FH, * 15 (Oakland County Circuit Court, December 13, 2012).  In addition, this Court has reviewed petitioner's psychiatric records from the Caro Center, TTI, and the Forensic Center.  Nowhere is there any indication that petitioner refused to

---

[14]   See Petitioner's Exhibit L.

20

take his medications or objected to taking them.  One TTI report, dated January 22, 2010, indicates that petitioner "is familiar with psychotropic medications and has taken them without incident in the past."  This suggests that petitioner had no objection to taking the medications.

Petitioner's situation is different from the defendant in *Riggins* because he actively sought out psychiatric treatment and expressly consented to or did not affirmatively object to taking the prescribed medications. *See Benson v. Terhune,* 304 F. 3d 874, 881-82 (9th Cir. 2002); *See also Basso v. Thaler,* 359 Fed. Appx. 504, 507-08 (5th Cir. 2010).  There are no cases which hold "the voluntary administration of medication" violates a defendant's right to due process of law. *Basso,* 359 Fed. Appx. at 508.  Moreover, it was not an unreasonable application of Supreme Court precedent for the Michigan courts to rule that petitioner knowingly and voluntarily agreed to accept these medications, because there is no evidence from the record that the staff at the various treatment facilities forced petitioner to take these medications against his will, petitioner made a free and deliberate choice to take these medications, and the records establish that petitioner was capable of thinking logically and expressing himself in a sufficient manner to refuse treatment or ask for more information before he took these medications. *Benson,* 304 F. 3d at 882-83. Petitioner is not entitled to relief on his third claim.

**F.  Claim # 4.  Petitioner's pre-trial bail claim is mooted by his conviction.**

In his fourth claim, petitioner argues that the trial judge revoked his pre-trial bail without cause when the judge ordered a competency evaluation.

Petitioner's conviction has rendered moot any constitutional claims regarding his pre-trial bail. *See U.S. v. Manthey,* 92 Fed. Appx. 291, 297 (6th Cir. 2004)(citing *Murphy*

21

*v. Hunt,* 455 U.S. 478, 481 (1982)("Hunt's claim to pretrial bail was moot once he was convicted")).  Petitioner is not entitled to habeas relief on his fourth claim.

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).  The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED**.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  October 21, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 21, 2015, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135

23